UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-080 (RJL) |
| | : | |
| v. | : | |
| | : | |
| IRAIDA FUENTES | : | |
|     Defendant | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court, sentence the defendant to a period of incarceration at the low end of the Guidelines range of 37-46 months.

**I.    BACKGROUND**

On July 23, 2007 the defendant pled guilty to one count of Unlawful Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(ii). As part of his plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:

On February 20, 2007 a Metropolitan Police Department ("MPD") confidential source ("CI") called Iraida Fuentes and discussed purchasing two kilograms powder cocaine from the defendant in exchange for $44,000. The CI agreed to pick up the defendant from her home in Maryland so that they could go to a place in the District of Columbia where the transaction was to take place. The CI's vehicle was an MPD vehicle with a video and audio recording device inside the vehicle. The defendant entered the CI's vehicle carrying a black handbag. Once in the vehicle the defendant and the CI discussed the details of the drug transaction that was to take place. The defendant indicated that she only had one kilogram of powder cocaine with her, but

that she would get the second kilogram later on in the day. Once the vehicle drove into the District of Columbia, MPD officers stopped the vehicle. The officers searched the defendant's black purse and in it they found a brick shaped package wrapped in tape. The brick shaped package was sent to the Drug Enforcement Administration laboratory for analysis and it was found to contain approximately 998.5 grams of powder cocaine.

**II.     SENTENCING CALCULATION**

    A.     Statutory Minimum/Maximum

The minimum term of imprisonment for the charge of Unlawful Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(ii), is 5 years. The maximum punishment is 40 years and/or a fine of $2 million, or both. Presentence Investigation Report ("PSR") at ¶ 55. The defendant, however, qualifies for the "safety valve" exception that would allow the Court to impose a sentence in accordance with the applicable sentencing guideline range without regard to any statutory minimum.

    B.     United States Sentencing Guidelines Calculation

The Presentence Report writer has calculated defendant's total offense level to be 21 and a criminal history category of I. Thus, the defendant's Guidelines range for violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(ii) would be 37-46 months. PSR at ¶ 56. Because the applicable Guidelines range is in Zone D of the Sentencing Table, the defendant would not be eligible for probation. See USSG § 5B1.1, Comment n. 2, and USSG § 5C1.1(f).

    C. The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment

principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 543 U.S. at 258. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, may adopt presumption of reasonableness with respect to sentences within the guidelines. See United States v. Rita, 127 S. Ct. 2456 (2007). A sentence within the Guidelines accommodates the goal,

endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history.  See, e.g., id. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.   This is so, said the court in United States v. Wilson, 350 F. Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the

public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." <u>Id.</u> at 950.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

### III.    DEFENDANT SHOULD BE SENTENCED AT THE LOW END OF THE GUIDELINES RANGE OF 60-71 MONTHS

The Government recommends that the Court sentence the defendant within the Guidelines range of 37-46months.  Such a sentence would not only be reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.  Those factors fall into three main categories:  the nature of the offense, the needs of the public, and the history and characteristics of the defendant. <u>United States v. Ranum</u>, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

The defendant's illegal conduct represents a real and present danger to the community. In this case, the defendant possessed a drug dealer's quantity of powder cocaine.  Indeed, the

defendant was about to engage in what she believed to be a drug transaction involving two kilograms of cocaine. Considering that drugs and drug-related gun violence are the source of the vast majority of crimes in this City and of violence against its citizens, the defendant's conduct here is serious and dangerous. It is vital that the Court send a message to both the defendant and the community that drug dealing will not be tolerated.

It should also be noted that the defendant has already received a substantial benefit for his early acceptance of responsibility. Specifically, the defendant received a three point decrease in his offense level under the Guidelines. Had the defendant not received this benefit, his Guidelines range would have been 51-63 months rather than 37-46 months. The Guidelines also take into consideration the fact that the defendant has a minimal criminal history through the safety valve exception, allowing the Court to disregard the statutory minimum sentence of 5 years and impose a sentence in accordance with the applicable Guidelines range. Accordingly, the defendant has already received all the leniency he should under the plea. Sentencing the defendant at the lower end of the Guidelines range would serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated.

V.    **CONCLUSION**

The defendant should be sentenced at the low end of the Guidelines range of 37-46 months.

Respectfully,

JEFFREY A. TAYLOR
United States Attorney

_____
LOUIS RAMOS
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.  #4243
Washington, DC 20001
Phone: 305-2195; Fax: 616-3782
D.C. Bar No. 472-176